RICK L. SHACKELFORD (SBN 151262)
ADAM SIEGLER (SBN 113266)
GREENBERG TAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California  90067-2121
Tel:     (310) 586-7700; Fax: (310) 586-7800
E-mail:        ShackelfordR@gtlaw.com
               SieglerA@gtlaw.com

Attorneys for Defendant,
Welch Foods, Inc., A Cooperative

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ELIZABETH PARK and CAROLYN OTTO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELCH FOODS, INC., A COOPERATIVE,<br><br>Defendant. | Case No. CV12-06449-PSG<br><br>**Assigned to:  Hon. Paul Singh Grewal, U.S. Magistrate**<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT WELCH FOODS, INC. AS TO:**<br><br>**"NO SUGAR ADDED" CLAIMS AND CITRIC ACID CLAIMS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   October 20, 2015<br>Time:   10:00 a.m.<br>Dept.:  Courtroom 5 – 4th Floor<br><br>Complaint Filed:       December 20, 2012<br>Trial Date:            December 7, 2015 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. DISCUSSION ........................................................................................................................ 1

    A. Plaintiffs Admit There Is No Sugar Added To Welch's 100% Juice Products .................. 1

    B. Welch's Natural Strawberry Spread – Citric Acid ............................................................ 4

        1. Plaintiffs' Purchasing Behavior Shows A Complete Lack Of Reliance And Damage ................................................................................................................ 4

        2. The Welch's Citric Acid Is Natural Because It Is "Expected" In Fruit And Is The Product of Fermentation . .......................................................................... 6

        3. Dr. Hong's Opinion Cannot Preclude Entry of Summary Judgment ..................... 8

        4. Citric Acid Was Not Used As A "Chemical Preservative" ................................. 10

        5. Citric Acid Is Not Used As An Artificial Flavor ................................................. 11

    C. The "Illegality" Claims Have No Merit. .......................................................................... 12

    D. The Seventh Cause Of Action, For Merchantability, Is Barred ....................................... 14

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Armenta v. Astrue*,
   No. EDCV10-1578 VBK, 2011 WL 3665011 (C.D. Cal. Aug. 22, 2011) .......................... 9

*Avila v. Willits Envtl. Remediation Trust*,
   633 F.3d 828 (9th Cir. 2011) ........................................................................................ 9

*Brazil v. Dole Food Co., Inc.*,
   No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ..................... 12

*Emblaze Ltd. v. Apple Inc.*,
   52 F. Supp. 3d 949 (N.D. Cal. 2014) ........................................................................... 9

*Figy v. Amy's Kitchen, Inc.*,
   No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ......................... 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13–cv–03999–BLF, 2015 WL 3630000 (N.D. Cal. June 2, 2015) ........................ 9

*Hampton v. Gebhardt's Chili Power Co.*,
   294 F.2d 172 (9th Cir. 1961) ...................................................................................... 14

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) .................................................................. 3, 4

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir.1991) ........................................................................................ 3

*Major v. Ocean Spray*,
   No. 5:12-cv-036067-EJD, 2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ...................... 4

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ................................................................................... 2, 9

*Nguyen v. Medora Holdings*,
   Case No. 5:15-cv-0018-PSG, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) .......... 4, 5

*Park v. Welch Foods, Inc.*,
   No. 5:12–cv–06449–PSG, 2014 WL 1231035 (N.D. Cal. Mar. 20, 2014) ................. 13

*Trazo v. Nestle USA, Inc.*,
   No. 5:12-cv-0272-PSG, 2015 WL 4196973 (N.D. Cal. July 10, 2015) ................ 12, 13

*United States v. Various Slot Machs. on Guam*,
   658 F.2d 697 (9th Cir. 1981) ....................................................................................... 9

*W. Parcel Express v. United Parcel Serv. of Am., Inc.*,
   65 F. Supp. 2d 1052 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999) ....................................... 9

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008). ............................................................................................... 7

**State Cases**

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*,
   54 Cal. App. 4th 357 (1997) ............................................................................................... 14

*Klein v. Duchess Sandwich Co.*,
   14 Cal. 2d 272 (1939) ......................................................................................................... 14

*In re Tobacco Cases II*,
   D065165, 2015 WL 5673070 (Cal. Ct. App. Sept. 28, 2015) .............................................. 13

**State Statutes**

Cal. Com. Code § 2314 .................................................................................................................. 14

**Rules**

Fed. R. Evid. 702 ..................................................................................................................... 8, 9

**Regulations**

21 C.F.R. § 10.115(b)(3) ................................................................................................................. 7

21 C.F.R. § 101.22(a) ................................................................................................................... 12

21 C.F.R. § 101.22(j) .................................................................................................................... 11

21 C.F.R. § 172.515(b) ................................................................................................................. 12

21 C.F.R. § 182.60 ....................................................................................................................... 12

21 C.F.R. § 182.3013 ................................................................................................................... 11

58 Fed.Reg. § 2303 ......................................................................................................................... 7

59 Fed.Reg. § 378 ........................................................................................................................... 4

**Constitutional Provisions**

U.S. Constitution, Fifth Amendment ............................................................................................ 13

U.S. Constitution, Article III ........................................................................................................... 5

iii
WELCH FOODS, INC.'S REPLY I/S/O MOTION FOR SUMMARY JUDGMENT
*CASE NO. CV12-06449-PSG*

## I. INTRODUCTION

Summary judgment should now be granted, because Plaintiffs have no evidence to raise any triable of fact as to their claims that they were misled by the "No Sugar Added" label on the 100% Juice and the "All Natural" label on the Natural Strawberry Spread. Specifically, the undisputed evidence shows that the "No Sugar Added" statement was literally true, because there was no sugar added to Welch's 100% Juice. Both Plaintiffs admittedly continue to drink beverages with comparable levels of sugar in them, and they did not look to 100% Juice as a way of reducing calories. The evidence also shows that citric acid is a natural and virtually universal ingredient in fruits, vegetables and human bodies, that was not used in the Natural Strawberry Spread as either a flavor or preservative. Again, Plaintiffs make no efforts to exclude citric acid from their diets. Welch's motion is based on Plaintiffs' admissions in their (1) declarations, (2) deposition testimony, and (3) purchase histories, all of which prove beyond any doubt that they were not misled, they did not rely to their detriment, and they did not suffer any injury, damage or loss, in purchasing these products.

It is important to remember that no class has been certified in this case. Thus, the issue before the Court on this summary judgment motion is <u>not</u> whether some un-named person might have been misled, or could have relied, or could have suffered damages; rather it is whether the <u>two individual Plaintiffs</u>, Park and Otto, have raised a triable issue of fact as to any of their six fraud-based consumer claims and their merchantability claim. Against this standard, Plaintiffs offer only speculation about other consumers, other foods, and other uses of citric acid not at issue here. On the undisputed evidence, Welch's is entitled to summary judgment.

## II. DISCUSSION

**A.    Plaintiffs Admit There Is No Sugar Added To Welch's 100% Juice Products**

After three years of litigation, Plaintiffs have now admitted what Welch's has been saying all along: there is <u>no sugar added whatsoever</u> to the 100% Juice, and the label statement "No Sugar Added" is <u>absolutely true and accurate</u>. As the Court may recall, the original Complaint, filed in 2012, purported to describe Welch's 100% Grape Juice products as having "<u>added</u> sugars such as concentrated fruit juice" (Compl., Dkt. #1, at 19, ¶ 68), and Plaintiffs have perpetuated that myth through the Third Amended Complaint (TAC, Dkt. #36, at 11, ¶ 46).

In Welch's moving papers, its Research Scientist, Gregory May, explained in detail that the only sugar in the Welch's100% Juices is the same sugar, at the same levels, that existed when the fruits were first picked, and this was confirmed by Welch's Regulatory Scientist, Catherine Palmer. (Dkt. #63-1.) Even Plaintiffs own expert, Dr. Scarbrough, admitted: "Based on the ingredient list, I have no reason to believe that there were other sugars added." (Scarbrough Dep. 37:13-15.) All of the scientists on both sides agree that there is no added sugar.

Faced with these indisputable facts, Plaintiffs do not contest, and therefore concede, that Welch's was right all along: the "No Sugar Added" statement is true. Plaintiffs' admission is elliptical and coy – "<u>Even assuming</u> that the Brix level of Defendant's reconstituted juice is the same as freshly pressed fruit juice . . ." – but it is unmistakable nonetheless. (Opp'n 3:4-5.)

Now, Plaintiffs attempt to resurrect their claim by arguing that "even assuming" the label is true and accurate, they were still somehow misled, or at least that "Plaintiffs [sic] understanding of the NSA claim shows that a question of fact exists whether it was misleading and thus misbranded." (Opp'n 3:6-7.) But that argument fails as well, because they have not established anything they were "misled" about. The claims clearly have nothing to do with the actual product, because both Park and Otto stated under oath that they **would buy the same products again** if they were differently labeled:

> I **would purchase** Welch's 100% juices were each to be labeled properly so that it was no longer misbranded and was no longer illegal to sell or hold under California law

(Park Decl. ¶ 4, **Ex. 4**; Otto Decl. ¶ 5, **Ex. 5**, emphasis added.)

In other words, Plaintiffs admit that they did not rely to their detriment on the supposed "low calorie" (Park) or "no calorie" (Otto) aspect of the Juices, because now they would buy the same Juices with the same calories and same levels of sugar at the prevailing retail price wherever they chose to shop.[1]

---

[1] Against these party admissions, the contention of Dr. Julie Caswell, that a statement can be true and "still" misrepresent the product is legally irrelevant, because it is not based on any evidence in the record in this case. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding expert report in ruling on summary judgment where expert's "speculation … ha[d] no basis in the record").

Faced with their own sworn statements, Plaintiffs have tried yet another trick: they simply recant their prior admissions and launch an entirely new claim – never alleged in their four Complaints – that "While Plaintiffs purchased Welch's 100% juices as a low calorie drink for their family in the past, they **now each would purchase the juices as a sugary treat**." (Opp'n 5:14-16, emphasis added.) Plaintiffs refer to "Declarations of Elizabeth Park and Carolyn Otto attached hereto as Exhibits B and C, respectfully [sic]." (Opp'n. 5:16-17.) But Exhibits B and C are actually deposition transcripts, and there are no such declarations on file that Welch's has been able to find.[2]

And even if such self-serving declarations magically now appeared, in place of the depositions, they would be insufficient to create a triable issue of fact and avoid summary judgment. The original Declarations contain no exception for "sugary treats," and Plaintiffs have already alleged in their Third Amended Complaint that they "actively seek to reduce overall sugar in their diets and purchase foods accordingly." (TAC ¶¶ 90, 95.) The law is clear that a party opposing summary judgment may not contradict her own sworn admissions. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

Plaintiffs' last desperate gasp is that, "even assuming" the label is accurate, and "even assuming" that they themselves would buy the same Juice with the same calories (two facts that they do not dispute), they were still somehow "misled" (although about what, they do not say), and thus should have some sort of claim. Plaintiffs' position is refuted by the very cases they cite. They refer to *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120 (N.D. Cal. 2014),[3] for the proposition that "Plaintiffs must satisfy the 'reasonable consumer' test, which requires Plaintiffs to show that members of the public are likely to be deceived by Defendant's labeling statements." (Opp'n 2:15-17.) But the *Kane* court dismissed <u>with prejudice</u>, at the <u>pleading stage</u>, all of the "no sugar added" claims made by plaintiff Kane (who was

---

[2] Counsel for Welch's consulted with Plaintiffs' counsel but to date neither party has identified these additional declarations. Plaintiffs' Opposition also does not specify any deposition testimony to support this claim, which is understandable, since this theory was never pled, and Welch's had no reason to ask about it at the deposition of Plaintiffs Park and Otto.

[3] Plaintiffs cite to the July 12, 2013, unreported order, which was superseded by the reported decision.

represented by the same counsel as Plaintiffs in this case), holding that it was "<u>implausible</u>" that consumers believed that Chobani yoghurt did not contain sugar, because the ingredient list identified "evaporated cane juice" as an ingredient.  *Id.* at 1132-33.

Like the plaintiffs in *Kane*, Plaintiffs here try make the "implausible" argument that they could and did ignore the legally required, and properly displayed, information on the label which clearly showed the number of calories and the amount of sugar, as confirmed by Plaintiffs' expert, Dr. Scarbrough.  (Scarbrough Dep. 15:4-19:15.)  Plaintiffs' claims must be evaluated by examining the label as a whole, and the label as a whole renders their "understanding" patently unreasonable.  Ms. Park admitted that the calories were "**pretty plainly stated on the label.**" (Park Dep. 113:23–114:7, emphasis added; 63:2-10 (confirming she knew where to find nutrition panel).)  It is entirely "implausible" that Ms. Park purchased 200 bottles of Welch's Juice, yet was misled as to the calorie information that was plainly stated, in the same federally mandated place, on every bottle.[4]

Welch's respectfully urges the Court to grant summary judgment as to the "No Sugar Added" claim, which will moot the class action as to the Juices and remove Park as a litigant.  See *Major v. Ocean Spray,* No. 5:12-cv-036067-EJD, 2015 WL 859491, at *5 (N.D. Cal. Feb. 26, 2015) (granting summary judgment where "No Sugar Added" message was "properly applied" to Defendant's products made from concentrate which were reconstituted to the correct Brix level) (**Ex. 36**).

**B.      Welch's Natural Strawberry Spread – Citric Acid**

The Court need not wade into the dense thicket of irrelevant Federal Register citations in Plaintiffs' Opposition, because Plaintiff Otto never relied on the presence or absence of citric acid in making her purchasing decisions, whether it was made from mycological fermentation or not.  For the same reason, she suffered no economic damage.

**1.      Plaintiffs' Purchasing Behavior Shows A Complete Lack Of Reliance And Damage**

As this Court reasoned in *Nguyen v. Medora Holdings, LLC*, No. 5:15-cv-00618-PSG, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015), the subsequent purchasing behavior of a plaintiff is powerful proof

---

[4] Plaintiffs' reference to 59 Fed Reg. 378 is irrelevant.  (Opp'n 4-5.)  As Plaintiffs acknowledge in footnote 4, that reference is for vitamins and supplements, not juice.

4

of lack of reliance. In *Nguyen*, plaintiffs claimed that they relied to their detriment on an "All Natural" label, thinking that the product contained no "GMO" ingredients. But, as the Court noted: "Plaintiffs specifically admitted that they have not avoided foods that they know contain GMOs." The Court determined that such plaintiffs "do not have Article III standing to pursue any relief." *Id*. at *6.

Like the plaintiffs in *Nguyen*, Plaintiff Otto repeatedly purchased products that contained citric acid, including Hawaii's Own Juice Concentrates, Smucker's Syrup and Safeway Lite Syrup – even after Otto filed this lawsuit. (Otto Citric Acid Labels, **Ex. 19**.) And her co-Plaintiff, Park, who is not even suing on this claim, candidly admitted she does not avoid foods with citric acid: "**Do you specifically avoid** foods and beverages which contain citric acid? A. "**No.**" (Park Dep. 98:17-99:2, emphasis added.) Accordingly, the evidence before this Court points to a single indisputable fact: both Plaintiffs bought, and continue to buy, products which contain citric acid, without expressing any questions about how the citric acid in such products is derived, whether through a fermentation process recognized as natural by the FDA,[5] or otherwise.

Given this undisputed fact, Otto's position makes no logical or legal sense. To start with, Otto describes citric acid as a "chemical." (Otto Dep. 111:1-5, **Ex. 7**.) If Otto's position is that all citric acid, including citric acid freshly squeezed from citrus fruit, is a "chemical" which she avoids, then that is a view that is simply not reasonable for an adult consumer in the 21st century. Even Park, who claims she bought 200 bottles of Juice without reading the nutrition facts panel, is more reasonable than that. And, as demonstrated above, Otto's own purchase behavior proves that she does not avoid citric acid in her food purchases.

Therefore, Otto's position must be that she buys and consumes products with "natural" citric acid as she defines it (*i.e.*, squeezed from or occurring in citrus fruit), and specifically avoids products with "chemical" or "artificial" citric acid, as she defines it. But her purchasing behavior and testimony do not support this. (See **Ex. 19**.)[6] She never explains how she tells the difference between the two.

---

[5] See Alexia Letter, **Ex. 32** ("naturally-derived citric acid that is made through a fermentation process").

[6] Welch's respectfully urges the Court to examine **Exhibit 19** in detail. These products, which Otto bought, include as ingredients not only citric acid, but also high fructose corn syrup, ascorbic acid, Yellow Dye 6, and Red Dye 40. These products completely refute her contention that she can or does avoid "chemicals" or citric acid in her grocery purchases.

Nor could she. Citric acid is chemically identical whether squeezed or produced by fermentation. Moreover, she could have no basis for comparing the citric acid from the two sources in packaged foods. As Gregory May explained, mycological fermentation has been used for almost a century to produce citric acid for use in food. Even Dr. Hong does not dispute these facts, and he further adds that "90% of the world production of citric acid" uses this method and that "food manufacturers, including Welch's" also use this method. (Hong. Decl. ¶¶ 33, 37.) Understandably, Otto has not pointed to a single competing spread product which contains added "natural" citric acid (as she subjectively defines it).

Since Otto buys products with citric acid, can't identify any products which have "fresh squeezed" citric acid, and couldn't tell the difference between the two types of citric acid, she could not have relied on the source of the citric acid in making her purchasing decisions. The only way she could have satisfied such an idiosyncratic definition of "chemicals" would have been to avoid all products with any form or amount of citric acid, which she plainly did not do. Since Otto did not rely on the "All Natural" label to make such purchasing decisions with regard to citric acid, her claims as to citric acid cannot survive summary judgment.

**2.     The Welch's Citric Acid Is Natural Because It Is "Expected" In Fruit And Is The Product of Fermentation**

In opposing Welch's Motion, Otto is swimming upstream against the regulatory current. She says her claims are based on FDA regulations, but the FDA has <u>specifically declined</u> to define the term "natural." Otto attaches an excerpt from an FDA website, but the quote, in its entirety, refutes her position:

> From a food science perspective, it is difficult to define a food product that is 'natural' because the food has probably been processed and is no longer the product of the earth. That said, FDA has not developed a definition for use of the term natural or its derivatives. However, the agency has not objected to the use of the term if the food does not contain added color, artificial flavors, or synthetic substances.

(Plaintiffs' Ex. E to Barrett Decl., emphasis added.)

The FDA has stated, however, that "natural" would include the concept that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to,

6

a food <u>that would not normally be expected</u> to be in the food." 58 Fed. Reg. 2303, at 2407 (Jan. 6, 1993) (emphasis added), Ex. 29.)  In this case, Dr. Scarbrough acknowledged that citric acid is "expected" in fruits (Scarbrough Dep. 59:5-12), and Dr. Hong confirms that citric acid is "found in small quantities in virtually all plans and animals. (Hong Decl. ¶ 31.)  Since citric acid is "expected," and indeed inherent in fruits, it is natural to find it in Strawberry Spread.

      Otto's references to the Merriam-Webster online dictionary (Opp'n 11-12) cannot create a regulatory definition outside of the federal rule-making process.  Similarly, the USDA food standards (Hong Decl. 5 ¶ 27) are not authoritative, because the products at issue here are regulated by the FDA, not by USDA.  Simply put, if there already were law supporting Plaintiffs' position as to "natural", they would have cited it, instead of relying on these irrelevant and tangential sources.[7]

      Plaintiffs are really asking this Court to make <u>new</u> law, and declare that a product that contains <u>any</u> amount of citric acid naturally derived from fermentation cannot carry the label statements "all natural," "no artificial flavors," or "no preservatives" – regardless of the purpose that citric acid actually serves in the products.  If such a rule were to be established, it is for the FDA to do, not private litigants.

      Plaintiffs recognize that they are asking this Court to go where no other court has gone before, so they attempt to create the impression that this is a well-worn path for the FDA.  The FDA warning letters they cite to, however, were sent to <u>other</u> companies for <u>other</u> products with <u>other</u> uses for citric acid, and are non-binding, irrelevant, and constitute inadmissible hearsay.  See, e.g., 21 CFR § 10.115(b)(3) (FDA's "<u>Guidance documents do not include</u>: . . . general information documents provided to consumers or health professionals, speeches, journal articles and editorials, [and] <u>warning letters</u>").

---

[7] Plaintiffs rely, or purport to rely, on the *Gerber* case, as if it were some magic "get out of summary judgment free" card.  *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 940 (9th Cir.), *op. amended & superseded on denial of reh'g*, 552 F.3d 934 (9th Cir. 2008).  But that case was a pleading case, not a summary judgment, where there was no factual record, such as admissions in declarations and depositions as there are here, and where the labelling issue was completely different.  Thus, *Gerber* stands only for the proposition that a false label on the front cannot be excused by a true label on the back.  Here, the "All Natural" on the front and the citric acid ingredient listed on the back are absolutely consistent and accurate.

In any event, to the extent that warning letters inform the issue at all, they tend to undermine Plaintiffs' position. Plaintiffs started out this case with the Alexia warning letter (cited in the Third Amended Complaint), but Welch's discovered that the FDA had sent a further letter to Alexia stating:

> According to your response letter, the firm was "reformulating its remaining potato products containing disodium dihydrogen pryophosphate to use **naturally-derived citric acid that is made through a fermentation process."** . . . . We note that the source of the citric acid was not disclosed; however, provided the ingredient is from a natural source, **we would not take issue with its use on a product labeled as "natural."**

(**Ex. 32**, emphasis added.)

Next, Plaintiffs put forward the 2001 Oak Tree Farm Dairy warning letter (Barrett Decl. **Ex**. A, 253), but the FDA did <u>not</u> cite Oak Tree for having citric acid in its "All Natural Lemonade," for the obvious reason that lemonade is <u>expected</u> to have citric acid in it, just like fruit preserves are expected to have citric acid in them.[8]

Now, Plaintiffs offer the 2001 Hirzel Canning and the 2010 Chiquita Brands warning letters (Barrett Decl. **Ex**. A, 255, 271), to the effect that these companies cannot use the term "natural" where they used ascorbic acid or calcium chloride, in conjunction with citric acid, as preservatives. These two letters miss the mark in two ways: first, they don't apply here because Welch's did not use citric acid as a preservative; and second, they don't account for the use of citric acid derived from a fermentation process, as expressly permitted by the Alexia letter from the FDA. (**Ex. 32**.) In short, these letters do not create the kind of blanket prohibition that Plaintiffs are asking this Court to make.

### 3. Dr. Hong's Opinion Cannot Preclude Entry of Summary Judgment

With no express regulatory authority to support their position, Plaintiffs have introduced a new expert, Dr. Hong, but his declaration is legally insufficient to prevent the entry of summary judgment.

*First*, Dr. Hong is not and does not claim to be an expert in FDA law or regulation. Therefore, his opinions and interpretations of such non-medical matters are not entitled to any weight. See Fed. R. Evid. 702 (expert must be "qualified as an expert by knowledge, skill, experience, training, or

---

[8] A proper reading of the letter shows that the FDA took issue only with citric acid in the iced tea, which would not normally be expected to have citric acid.

education"); *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 953 (N.D. Cal. 2014) ("Expert testimony must be both relevant and reliable to be admitted pursuant to Rule 702."). Where the proposed expert lacks such expertise, his opinion is entitled to "little weight" and certainly cannot defeat summary judgment. *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (finding court did not err in striking toxicology expert's declaration and granting summary judgment because expert's "opinion on the content of waste in the chrome-plating industry and what flows from it are outside the areas of [his] expertise," and, "for this reason alone, his opinions were properly excluded for lack of qualification"); *Armenta v. Astrue*, No. EDCV10-1578 VBK, 2011 WL 3665011, at *4 (C.D. Cal. Aug. 22, 2011) (affording "little weight, if any" to medical doctor's opinion regarding reasonable work accommodations for plaintiff because doctor "[was] not a vocational expert"). Here, it is telling that Dr. Hong, a medical doctor, does not offer a single fact or opinion on any medical issue: specifically, he never opines that Ms. Otto suffered any medical injury or risk from ingesting citric acid.

      *Second*, Dr. Hong has no factual basis for the opinions he renders. Experts cannot be used to create a triable issue of fact where their reports are not supported with specific facts or where the indisputable record contradicts or otherwise renders the opinions unreasonable. *United States v. Various Slot Machs. on Guam*, 658 F.2d 697, 699 (9th Cir. 1981) (holding expert affidavits insufficient to oppose summary judgment where assertions were made without supporting facts).[9] Here, Dr. Hong does not claim to have visited the Welch's plant or that of its suppliers. He has not conducted any chemical or scientific tests on the Welch's products. When he says that the citric acid product from

---

[9] There are numerous cases so holding: *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding expert report in ruling on summary judgment where expert's "speculation … ha[d] no basis in the record. His study rests on unsupported assumptions and ignores distinctions crucial to arriving at a valid conclusion"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–cv–03999–BLF, 2015 WL 3630000, at *11 (N.D. Cal. June 2, 2015) (finding plaintiff's expert report "hardly suffice[d] to create a genuine dispute" where conclusory statements were not supported with specific facts); *W. Parcel Express v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal. 1998) (determining expert opinions did not create fact issues, noting that "assertions in expert declarations do not automatically create genuine issues of fact" and "[w]hen expert opinions are not supported by sufficient facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon"), *aff'd*, 190 F.3d 974 (9th Cir. 1999).

fermentation has additional "residues," he never specifies what those are or how they would be unnatural or harmful.  (Hong. Decl. ¶ 32.)

*Third*, Dr. Hong's factually unsupported testimony is already refuted by that of Dr. Scarbrough, Plaintiffs' other expert.  Dr. Scarbrough acknowledged that "metabolically, a molecule of citric acid, whether it's naturally occurring or produced through a fermentation product, would be handled <u>identically</u> in the body."  (Scarbrough Dep. 62:25-63:3, **Ex. 10**.)  Dr. Hong offers no facts, no scientific evidence, and no medical opinion that Dr. Scarbrough is incorrect.  And even if he did so, Plaintiffs cannot create a triable issue of fact by having one of their experts disagree with the other one.  This is exactly the sort of untethered expert speculation that has been found to be insufficient to oppose summary judgment.

**4.    Citric Acid Was Not Used As A "Chemical Preservative"**

Nor does Dr. Hong refute the specific, scientific point made in the declaration of Gregory May, Welch's Research Scientist, that citric acid was <u>not needed or used as a preservative</u> in the Spreads:

> Citric acid is <u>not used as a preservative</u> in the Strawberry Spread, because this product <u>does not need a preservative</u>.  The water activity and pH (acid level) in the finished product are <u>already sufficient</u> (even without the addition of citric acid) to prevent any pathogenic organisms from infecting the product.  This process is well recognized in making fruit preserves, which do not require added preservatives.

(May Decl. ¶ 26, emphasis added.)

Dr. Hong spent 2 ½ pages of his declaration setting forth his degrees and honors, but <u>Dr. Hong does not say anywhere that Gregory May is wrong</u>, and he offers no opinion that citric acid was <u>specifically needed</u> as a preservative in the Welch's Strawberry Spread.

Instead, even though he is not an expert on FDA regulations, Dr. Hong opines generally that the FDA recognizes that citric acid has preservative "properties" or can be used as preservative in other foods.  The fact that the FDA might have recognized and permitted citric acid as a preservative <u>in other foods</u> does not make it a preservative in <u>this food</u>, namely the Natural Strawberry Spread.

Moreover, Plaintiffs' arguments and Dr. Hong's declaration both beg the central question:  in what quantity?  A compound could act as a "preservative" only if it were present in sufficient quantities to preserve a given volume of food.  For example, salt could be used as a preservative for meat.  But that

does not mean that sprinkling a few grains on a steak will preserve it.[10]  Catherine Palmer, the Regulatory Scientist for Welch's, stated that:  the amount of citric acid added is "two 5-pound bags to a vat that is 6 feet tall and 6 feet wide, and three-quarters filled with approximately 3,500 pounds of natural fruit."  (Palmer Decl. ¶ 7.)  Plaintiff Otto and Dr. Hong offer no evidence to refute this description of the amount used, or to provide scientific evidence that 10 pounds of citric acid would be a sufficient amount to act as a preservative when mixed with 3,500 pounds of fruit.

Moreover, if Plaintiffs were correct that citric acid were always "a chemical preservative" then even citric acid squeezed from a lemon would also be considered a "chemical preservative" and all citrus fruit juices would be considered to contain preservatives.  And if Plaintiffs' argument were correct, then surely they would be able to point to some authority that says in effect that citric acid, in any quantity, is <u>always</u> considered a preservative and an artificial flavor, such that the presence in any amount disqualifies a product from being labeled as containing no artificial flavors or preservatives.  They have no such authority.[11]  Indeed, although Plaintiffs try to string together various Code of Federal Regulations citations in their brief, they fail to mention that citric acid is not even included in the list of "Chemical Preservatives" in Part 182, Subpart D.  See 21 C.F.R. 182.3013 et seq.

### 5. Citric Acid Is Not Used As An Artificial Flavor

Otto's claim that citric acid acts as an artificial flavor is equally unsupported.  By itself, citric acid is not a flavor and it did not function as such in the Strawberry Spread.  Just because Plaintiff claims that the FDA claims that citric acid "<u>can</u> serve as a flavor" (Opp'n 15:1-2) does not mean that always does so.  Notably missing from Otto's allegations, declarations and deposition testimony is any claim that she ever tasted citric acid as a flavor in the Strawberry Spread.  Again, the fact that the FDA

---

[10] And calling it "sodium chloride" does not make it into a harmful "chemical."

[11] In footnote 7 (Opp'n 9), Plaintiffs cite 21 CFR § 101.22(j) for the proposition that the label must disclose the "function" of ingredients and that the failure to do so renders the label defective and the product misbranded.  But this section only applies where the intended function is as a preservative, and Plaintiffs deliberately omit the rest of the sentence, which requires a "separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or" to promote color retention."  As Gregory May stated, citric acid was not used for any of these purposes.  And no such theory was stated in the Third Amended Complaint.  The claim was invented in response to Welch's motion for summary judgment.

recognizes that citric acid <u>could</u> serve to affect the tartness in food does not mean it was used as a flavor in this food. Indeed, Otto appears to concede that citric acid is not a "flavor," and instead makes a complicated argument that it is a "flavoring agent" or "flavor enhancer." (Opp'n 15-16.) This is an entirely new claim that was not alleged in the Third Amended Complaint. (Dkt # 36, at 12, ¶¶ 61-62 ("artificial flavors and/or preservatives such as citric acid").)

More importantly, citric acid is not an <u>artificial</u> flavor. Plaintiffs cite to 21 C.F.R. § 101.22(a) for the definition of the "artificial flavor" but that definition specifically refutes their claim:

> **(1)** The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to <u>impart flavor</u>, which is <u>not derived</u> from a spice, <u>fruit</u> or fruit juice, <u>vegetable</u> or vegetable juice, edible yeast, herb, bark, bud, root, leaf <u>or similar plant material</u>, meat, fish, poultry, eggs, dairy products, or <u>fermentation products thereof</u>. Artificial flavor includes the substances listed in §§ <u>172.515(b)</u> and <u>182.60</u> of 21 CFR except where these are derived from natural sources.

21 C.F.R. §101.22(a) (emphasis added).

Here, citric acid does not "impart flavor" and, more importantly, citric acid <u>is</u> derived from "<u>fermentation</u> products" of fruits, vegetables or similar plant material." Therefore, it is not an artificial flavor as defined by the FDA.

C.   <u>The "Illegality" Claims Have No Merit</u>

The time has come to eliminate "illegality" as the basis for any and all of Plaintiffs' causes of action. First, "illegality" cannot be used to conjure up an economic damages claim by asserting that products are "illegal" to own or sell and thus "legally worthless" to consumers who bought them for consumption, not resale. Other courts have recently held that "illegality" cannot create such a damages claim. *See, e.g., Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013). Claims based solely on alleged label infractions would be private enforcement actions, which private citizens are not permitted to bring. Instead, plaintiffs like Park and Otto can only avoid summary judgment by showing triable issues of act on the essential elements of their specific claims, not solely on alleged labelling infractions.

Permitting private actions based on labelling infractions would also violate the well-established prohibition on non-restitutionary disgorgement, as this Court explained in *Trazo v. Nestlé USA, Inc.*, No.

5:12–cv–02272–PSG, 2015 WL 4196973 (N.D. Cal. July 10, 2015), after the Court collected and analyzed the cases on this point:

> "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the <u>difference between a product as labeled and the product as received</u>," . . . "There is <u>no reason to go beyond the price premium</u>, and doing so would result in a windfall to plaintiff."

*Id*. at *3 (footnote omitted, emphasis added); *see also, In re Tobacco Cases II*, D065165, 2015 WL 5673070, at *8, 13 (Cal. Ct. App. Sept. 28, 2015) (examining California law and holding that restitution is limited to the difference between price paid and value received).

Second, "illegality" cannot be used to create an imagined "fear of prosecution" as an element of damages. To get a true sense of the absurdity of Plaintiffs' claims in this regard, one need only to imagine what these claims would be like if they went to trial. Ms. Otto and Ms. Park would give the same testimony from the witness stand that they gave in deposition, namely that they were never jailed, fined, sentenced, convicted, prosecuted, arrested, cited or even warned for having "illegal" bottles of juice, and they don't know anybody who was. (Park Dep. 100:12-101:10; Otto Dep. 148:4-7.) They would testify (again) that no policemen ever raided their family kitchen, and that they never suffered any "loss" by having their products confiscated. (Park Dep. 101:11-13.) They would testify that they routinely buy other products which their own lawyers claim, in other lawsuits, are also illegal to possess. (Park Dep. 108:8-109:18.) On this risible evidentiary basis, their counsel would then ask a jury for millions of dollars. Or, perhaps as Plaintiffs now suggest, they would invoke their Fifth Amendment rights, and not testify at all. (Opp'n 20-21.)

Turning now to the legislative history, which Plaintiffs conveniently ignore in their brief, it is clear that the illegality of "holding" a mislabeled product was meant to apply to manufacturers, not to consumers who bought individual bottles of juice. (Legislative History, **Ex. 34**.) When this Court ruled in 2014 that the illegality claim could survive a motion to dismiss, the Court did not have before it the testimony of Otto and Park cite above, or the legislative history. (*Park v. Welch Foods, Inc.*, No. 5:12–cv–06449–PSG, 2014 WL 1231035 (N.D. Cal. Mar. 20, 2014) (Dkt # 49.) Now, on summary judgment, the evidence and law are squarely presented, and Plaintiffs have no contrary evidence or law.

D. **The Seventh Cause Of Action, For Merchantability, Is Barred**

The merchantability is claim is barred for multiple reasons.  The main thrust of California Commercial Code section 2314 is to ensure that merchants get merchantable goods.  And Plaintiffs concede they are not merchants.

As consumers, Plaintiffs are not in privity with Welch's, and the only potential exception to the privity requirement is where consumer plaintiffs are injured.  See *Hampton v. Gebhardt's Chili Power Co.*, 294 F.2d 172, 172 (9th Cir. 1961) (chili powder contained powdered glass causing injury).  The only case cited by Plaintiffs proves this point.  In *Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272 (1939) (cited in Opp'n 21), plaintiff ate a prepackaged sandwich that contained "maggots" and "she remained ill for an additional period of about six months."  *Id*. at 274.  Plaintiffs allege no such injury here, and Dr. Hong offers no medical opinion that they suffered any such injury.

Plaintiffs also admit that they did not give timely pre-suit notice, but now claim they should be excused from that requirement because their merchantability claim was not added until October 30, 2013, almost a year after the original Complaint was filed in December 2012.  (Opp'n 22.)  Plaintiffs have it backwards:  the delayed filing proves that the merchantability claim is a belated, after-the-fact fantasy that didn't even exist when they filed their Complaint.

And the delay is still not a legal excuse.  Plaintiffs quote *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, 370 (1997), *superseded by statute as stated by Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal.App.4th 1194 (2008), for the proposition that "'The question of whether notice was reasonable must be determined from the particular circumstances and, where but one inference can be drawn from undisputed facts, the issue may be determined as a matter of law.'" (Opp'n 22:13-16.)  But Plaintiffs omit the very next sentence in the quote:  "Here, we conclude from the undisputed facts that Fieldstone failed to give the manufacturers reasonable notice of breach of any express warranties."  And the *Fieldstone* court went on to say:  "The trial court determined as a matter of law, Fieldstone's implied warranty claims were meritless because it had no privity with the manufacturers. We conclude there was no error." *Id*. at 370-71 (emphasis added).  *Fieldstone* is a great case – for Welch's.

14

Plaintiffs still try to argue that the products at issue "were not fit for the ordinary purpose." The term "<u>ordinary</u> purpose" means exactly that. The ordinary purpose of Welch's 100% Grape Juice is to provide a healthful, nutritious fruit juice with no sugar added. Plaintiffs admitted that they fully "consumed" every bottle they bought, with no ill effects. (Otto Dep. 55:16-56:1; Park Dep. 81:11-20.) And now, they even concede there was no sugar added, just as the label said, and that they would buy the same products again.

As might be expected for two non-merchants who bought and consumed hundreds of bottles of 100% Juice and untold quantities of Strawberry Spread, Plaintiffs have suffered no cognizable damages under a merchantability theory. They weren't prevented from reselling, they obtained the taste and hydration they expected, and they suffered no ill effects. With no status as merchants, no privity, no pre-suit notice, no ill effects, and no damages, Plaintiffs have no merchantability claim.

### III. CONCLUSION

Plaintiffs' case was created by lawyers and staffed by two hapless consumers (one of whom works part-time for Plaintiffs' counsel), who have been put in the awkward position of saying things that make no sense and are contrary to their own purchasing behaviors. Plaintiffs' own testimony and purchases prove beyond any dispute that they could not have relied upon Welch's 100% Juice as having "no calories" or "low calories." Otto's claim that citric acid is a "chemical" that she avoids – a claim that even Park won't support – is belied by her own purchases of other products with citric acid in them. Plaintiffs' allegations that they were subject to criminal prosecution, and that they suffered economic loss because the products are "illegal," are just fantasies that are, again, refuted by their own admissions and conduct.

These meritless and made-up claims, however, are causing real harm and real economic damage to Welch's, which is a Cooperative of family-owned growers and farmers. Through their Cooperative, these farmers now ask this Honorable Court to enter summary judgment and end this case.

DATED: October 2, 2015           GREENBERG TRAURIG, LLP

By   /s/ Rick L. Shackelford
     Rick L. Shackelford
     Attorneys for Defendant
     Welch Foods, Inc., A Cooperative